IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**MICHAEL FOSTER,**

    **Plaintiff,**

**v.**                                      **CASE NO. 2:09-cv-00957**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Michael Foster (hereinafter referred to as "Claimant"), filed an application for DIB on December 4, 2007, alleging disability as of June 8, 2007, due to post traumatic stress disorder ("PTSD"), hearing loss, tinnitus and anxiety. (Tr. at 95-103, 128.) The claim was denied initially and upon reconsideration. (Tr. at 48-52, 59-61.) Claimant requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on April 2, 2009, before the Honorable Theodore Burock. (Tr. at 23-45.) By decision dated April 27, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-

22.)  On August 10, 2009, the Appeals Council considered additional evidence offered by the Claimant, but determined it did not provide a basis for changing the ALJ's decision.  (Tr. at 1-4.)  On August 21, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2009).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §

404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2009). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 13.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of PTSD, depression, anxiety, hearing loss, dizziness/tinnitus, and irregular heartbeat. (Tr. at 13.) At the third inquiry, the ALJ concluded that Claimant's impairments

do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14.) The ALJ then found that Claimant has a residual functional capacity for medium work, reduced by nonexertional limitations. (Tr. at 15.) As a result, Claimant cannot return to his past relevant work. (Tr. at 20.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as dishwasher, hand packer and laundry worker, which exist in significant numbers in the national economy. (Tr. at 21.) On this basis, benefits were denied. (Tr. at 22.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty

to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was almost sixty-one years old at the time of the administrative hearing. (Tr. at 27.) Claimant graduated from high school. (Tr. at 28.) In the past, he worked as a utility man at an alloy plant. (Tr. at 41.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize the evidence of record related to Claimant's mental impairment below.

On January 22, 2008, Claimant was granted veterans' benefits for bilateral defective hearing loss (40%) and PTSD (30%) as of November 13, 2007. (Tr. at 164-68.)

The record includes treatment notes from the Veterans' Administration dated August 2, 2007, through December 19, 2007. (Tr. at 227-304.) On August 2, 2007, A.D. Faheem, M.D. examined Claimant. Claimant reported nightmares and problems with impulse and anger control. Claimant reported panic attacks. Claimant's memory, recall and judgment were intact, but attention and concentration were impaired. (Tr. at 248-49.) Dr. Faheem felt

5

that Claimant continued to have problems with PTSD and recurrent bad dreams, nightmares, flashbacks, intrusive thoughts and recurrent panic attacks.  He rated Claimant's Global Assessment of Functioning ("GAF") at 55.[1]  (Tr. at 250.)

On August 17, 2007, Claimant had stress related to his new hearing aids.  His diagnoses included PTSD, depression and bereavement due to the recent death of his brother and mother.  His GAF was rated at 45-48.  (Tr. at 292-93.)  On August 21, 2007, Claimant's GAF was rated at 50.[2]  (Tr. at 291.) Claimant participated in a twelve week mental health therapy group beginning on September 26, 2007.  (Tr. at 290.)  On October 3, 2007, Claimant's GAF was rated at 45, and he was diagnosed with PTSD and depression. (Tr. at 278.) On October 15, 2007, Claimant's GAF was rated at 45.  (Tr. at 275.)  On October 24, 2007, Claimant's GAF was rated at 50, after completing five of the twelve therapy sessions. (Tr. at 272.)  On November 28, 2007, Claimant's GAF was rated at 50-53.  (Tr. at 264.)  Claimant completed the twelve week therapy session on December 12, 2007.  (Tr. at 262.)

---

[1]  A GAF between fifty-one and sixty indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)."  American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

[2] A GAF between forty-one and fifty indicates "[s]evere symptoms (e.g., suicidal ideation, severe obsession rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)."  American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

On December 13, 2007, Dr. Faheem examined Claimant for a second time. Dr. Faheem diagnosed PTSD on Axis I and rated Claimant's GAF at 50. (Tr. at 247.) Dr. Faheem stated that

> [w]ith regards to the specific question about his functional impairment due to service-connected disability, while post-traumatic stress disorder by itself may not be enough to make him unemployable, however, when you combine it with his other service-connected condition like significant hearing impairment and he has difficulty in being able to communicate that causes him more irritability, upset, and frustration, I feel that a combination of his service-connected disabilities would make him disabled from holding any sedentary employment.

(Tr. at 248.) On December 19, 2007, Claimant's GAF was rated at 48-50 and 50. (Tr. at 257, 259.)

On February 6, 2008, Misti Jones-Wheeler, M.S. examined Claimant at the request of the State disability determination service. Ms. Jones-Wheeler diagnosed PTSD on Axis I. (Tr. at 319.)

On February 22, 2008, Holly Cloonan, Ph.D., a State agency medical source, completed a Psychiatric Review Technique form on which she opined that Claimant's severe mental impairments resulted in mild restriction in activities of daily living, marked difficulties maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace and no episodes of decompensation. (Tr. at 333.)

Dr. Cloonan completed a Mental Residual Functional Capacity Assessment on February 22, 2008, and opined under the "summary

7

conclusions" section, that Claimant was moderately limited in the ability to (1) remember locations and work like procedures; understand, remember and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) work in coordination with or proximity to others without being distracted by them; (4) accept instructions and respond appropriately to criticism from supervisors; (5) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (6) respond appropriately to changes in the work setting. (Tr. at 337-38.) Dr. Cloonan opined that Claimant was markedly limited in the ability to interact with the general public. (Tr. at 338.) Under the "functional capacity assessment" section of the form, Dr. Cloonan stated that Claimant "has the above limits in [functional capacity] associated [with] his mental condition. He is able to learn and perform work-like activities [with] limited interactions with others, in a low stress workplace environment." (Tr. at 339.)

On July 28, 2008, Timothy Saar, Ph.D., a State agency medical source, completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe. (Tr. at 354-66.)

The record includes additional treatment notes from the Veterans' Administration. (Tr. at 369-86.) On January 22, 2008, Claimant's GAF was rated at 53. Claimant reported Zoloft had

helped his condition. (Tr. at 384-85.)  On March 12, 2008, Claimant reported that he had retired.  Claimant was diagnosed with PTSD, depression and adjustment disorder with anxiety, and his GAF was rated at 55.  (Tr. at 379.)  On August 4, 2008, Claimant reported he was "doing fair.  My hearing is really terrible.  I'm more jumpy.  The doctors say it won't get better."  (Tr. at 372.) Claimant's GAF was rated at 50.  (Tr. at 373.)  On December 4, 2008, Claimant reported he was more depressed, mostly because of the time of year. (Tr. at 369.)  Claimant's GAF was rated at 55. (Tr. at 370.)

The record includes notes from additional group therapy sessions dated June 14, 2007, through December 11, 2008.  (Tr. at 388-419.)

At the administrative hearing, the ALJ posed the following limitations in his hypothetical question:  (1) medium level work, with no climbing of ladders, ropes or scaffolds and no concentrated exposure to noise, vibration or hazards (such as unprotected heights); and (2) limited interaction with others in a low stress environment that does not require extensive communication with others.  In response, the vocational expert identified the jobs of hand packer and laundry worker.  (Tr. at 42.)  When asked whether an individual with consistent GAFs at 50 or below could perform the jobs identified, the vocational expert testified that the hypothetical individual could not work "at 50 or below

9

consistently." (Tr. at 44.)

Claimant submitted additional evidence to the Appeals Council, including additional treatment notes from the Veterans' Administration. On April 13, 2009, Claimant's wife had recently passed away. A diagnosis of bereavement was added. Claimant's GAF was rated at 50. (Tr. at 423.) Claimant attended additional group therapy sessions dated December 16, 2008, through May 21, 2009. (Tr. at 431-39.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to consider the effect of GAF scores in the 50s and erred in failing to adopt the vocational expert's response to a hypothetical question including the GAF scores; and (2) the ALJ erred in failing to explain why he declined to afford controlling weight to the opinion of Claimant's treating physicians regarding Claimant's functional capacity and GAF scores. (Pl.'s Br. at 11-14.)

The Commissioner argues that (1) substantial evidence supports the ALJ's determination that Claimant is not disabled; (2) the ALJ complied with the applicable regulation in evaluating Claimant's GAF scores; and (3) the ALJ accommodated Claimant's mental and hearing impairments when questioning the vocational expert. (Def.'s Br. at 11-16.)

The court finds that the ALJ properly considered Claimant's

GAF scores and the other medical evidence of record related to Claimant's mental impairments and, his findings related to Claimant's mental limitations are supported by substantial evidence.

In his decision, the ALJ determined that Claimant suffered from the severe mental impairments of PTSD, depression and anxiety. (Tr. at 13.) In evaluating the "B" criteria to determine if Claimant met or equaled a listing, the ALJ found that Claimant had mild restriction in activities of daily living, moderate difficulties maintaining social functioning and in concentration, persistence and pace and no episodes of decompensation. (Tr. at 15.) In his residual functional capacity finding, the ALJ found that Claimant required "limited interaction with others in a low stress work environment. The claimant must not be required to communicate extensively with others." (Tr. at 15.)

In evaluating the GAF scores of record, the ALJ explained that he "gave no weight to the opinions of a GAF of 50 or below as the treatment records and the claimant's activities of daily living do not support such low functioning. Furthermore, the VA records in 2008 consistently indicate the claimant has [GAFs] in the range of 53-55 and even this is a low estimate considering his daily activities." (Tr. at 19.)

The ALJ's findings about Claimant's GAF scores are supported by substantial evidence. As noted above, although Claimant's GAF

11

scores were, in some cases, rated in the high 40s in 2007, by 2008, Claimant's GAF scores had improved to the 50s and above. While such scores, even in the 50s are not insignificant, the ALJ's residual functional capacity finding adequately accommodated Claimant's mental impairments and their resulting limitations.

Contrary to Claimant's assertions, the ALJ provided examples supporting his finding that Claimant's daily activities do not support the GAF scores below 50. The ALJ noted earlier in his decision that Claimant

> got up between 8:30 and 9:00 a.m. He indicated that he could groom independently. The claimant also noted that he could do necessary lawn work (Exhibit 5F). He reported on a questionnaire that he got his mail daily. The claimant noted that he picked up his daughter and grandson and brought them to his house until about 7:30 p.m. when he took them home.
>
> \*\*\*
>
> Regarding activities of daily living the claimant testified that he washes clothes and mows the lawn with a riding lawn mower. The claimant indicated that he uses the vacuum and mops. In fact, the claimant acknowledged that he does whatever needs to be done. He noted that he goes to a Vet Group meeting every Thursday night. The claimant testified that he goes to Sunday school. He indicated that his daughter helps him do his grocery shopping. These reported activities of daily living reveal the claimant functions fairly well and is not as limited as alleged.

(Tr. at 15.)

Claimant further argues that the ALJ erred when he disregarded the opinion of Claimant's treating physician, though he does not refer to the treating physician by name. (Pl.'s Br. at 14.)

The court finds that the ALJ adequately weighed the medical

12

evidence of record from treating, examining and nonexamining sources, in keeping with the applicable regulation at 20 C.F.R. § 404.1527(d) (2009). (Tr. at 17-20.) The ALJ afforded significant weight to the opinion of the State agency medical source, Dr. Cloonan, that Claimant could learn and perform work-like activities with limited interaction with others in a low stress workplace environment. (Tr. at 20.) In addition, the ALJ observed that the "VA records consistently indicate the claimant's psychological conditions were under fairly good control," citing treatment notes for support and that the objective findings of Ms. Jones-Wheeler reveal that Claimant's judgment, persistence and pace were within normal limits, his concentration was only mildly deficient and he was cooperative and polite during the examination. (Tr. at 18.)

Finally, pursuant to <u>Wilkins v. Secretary</u>, 953 F.2d 93, 96 (4th Cir. 1991), upon review of the record as a whole, including the new evidence submitted to the Appeals Council, the court concludes that even considering the additional evidence, the ALJ's decision is supported by substantial evidence.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this

Order to all counsel of record.

    ENTER: July 12, 2010

                                                          _____
                                                          Mary E. Stanley
                                                          United States Magistrate Judge